**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Advanced Respiratory, Inc.,** **Civil No. 00-2646(DWF/SRN)**

**Plaintiff,**

v.

**ORDER**

**Electromed, Inc.,**

**Defendant.**

---

Edward M. Laine, Esq. & Cyrus A. Morton, Esq., on behalf of Plaintiff.

Richard J. Bartz, Esq. & Paul A. Koches, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on May 28, 2002, on Defendant's Motion to Compel Discovery (Doc. No. 37 ) and Plaintiff's Motion for Protective Order and Sanctions (Doc. No. 41).

This Order addresses those motions.

## I. FACTUAL BACKGROUND

On December 6, 2000, Plaintiff filed the Complaint in the present suit, alleging patent infringement. Plaintiff is represented by the law firm of Oppenheimer Wolff & Donnelly LLP (Oppenheimer firm). Robert D. Hansen is the CEO of Defendant Electromed, Inc. (Affidavit of Robert D. Hansen (Hansen Aff.) ¶ 1.) Hansen previously retained the Oppenheimer firm for various business matters over a period of approximately 20 years. (Hansen Aff. ¶ 7.)

In May of 1992, Hansen and his brother were asked by American Biosystems, Inc., (ABI)

JUN 04 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

now Plaintiff Advanced Respiratory, Inc., to review one of its products. (Deposition of Robert D. Hansen (Hansen Depo.) at 22.) Specifically, ABI sought advice on a valve system for a vest that was designed to provide oscillatory pulses to respiratory patients. Id. at 26. After the meeting, the Hansen brothers discussed the vest between themselves, and decided that they could produce a superior product. Id. at 28. On May 27, 1992, Hansen spoke with his attorney at the Oppenheimer firm, Richard G. Lareau. (Affidavit of Edward M. Laine (Laine Aff.), Ex. E at OWD 0006 & 0009-0010.) During this conversation, Hansen discussed his idea for a vest for respiratory patients, and a medical venture that was to become Electromed. Id. Lareau, upon request, prepared a confidentiality agreement for Hansen's follow up meeting with ABI. Id. On March 3, 1993, the Oppenheimer firm also prepared and submitted corporate name filings with the Minnesota Secretary of State on behalf of Hansen. Id. at 0015.

In February 1993, Hansen contacted Lareau and asked him if he could identify any potential investors in Electromed. Id. at OWD 0013. At this time, Hansen and Lareau again discussed the Electromed vest. Id. Hansen continued to discuss Electromed with Lareau at various times through the summer of 1999. (Hansen Aff. ¶ 6.) In July 1999, Hansen submitted to Lareau an envelope containing information concerning his product, including an FDA letter. (Laine Aff., Ex. E at OWD 0027.) On July 19, 1999, Lareau returned the unopened envelope to Hansen. Lareau included a letter informing Hansen that another lawyer at the Oppenheimer firm might be involved in a matter involving Electromed, and, consequently, Lareau would have to refrain from comment. Id. On July 21, 1999, Hansen replied with a letter informing Lareau that he understood and appreciated Lareau's situation. Id. at OWD 0028.

Plaintiff has retained the Oppenheimer firm in the present case. On April 17, 2002,

lawyers from the Oppenheimer firm, though not Lareau, took Hansen's deposition. During this deposition, Hansen was questioned about his interaction with ABI in 1992. (Hansen Depo. at 20-22.) One of the Oppenheimer Attorneys present at the deposition was Edward Fox. In 1999, while working for the Oppenheimer firm, Fox represented an opposing party to Hansen in an unrelated matter. (Hansen Aff. ¶ 9.) Hansen's counsel raised the issue of the Oppenheimer firm's earlier representation of Hansen during a later point in the deposition. Id. at 91. At that time, Plaintiff's counsel declined to answer questions concerning this issue. Id. On April 19, 2002, a subpoena duces tecum was served on the Oppenheimer firm seeking documents and testimony relating to the earlier legal representation. (Ex. 1 to Statements on the Record of Counsel.) On April 26, 2002, the Oppenheimer firm filed an objection to the document production. (Ex. 2 to Statements on the Record of Counsel.) On April 29, 2002, Defendant's counsel attempted to depose representatives of the Oppenheimer firm, pursuant to the subpoena. Representatives of the Oppenheimer firm refused to submit to the deposition, explaining that there was no conflict.

## II DISCUSSION

### A. Relevance Standard.

Federal Rule of Civil Procedure 26(b)(1) provides:

> In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . The information sought need not be admissible at the trial if the information appears reasonably calculated to lead to the discovery of admissible evidence.

The Eighth Circuit has considered the breadth of Rule 26 and the possible abuses

discovery requests which can result from it.

> Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D. Minn. 1989) (and cases cited therein). While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122 (S.D. N.Y. 1986), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

Hofer v. Mack Trucks, Inc., 981 F.2d 377 (8th Cir. 1992).

**B. Local Rules.**

"The Minnesota Rules of Professional Conduct adopted by the Supreme Court of Minnesota as amended from time to time by that Court are adopted by this Court except as otherwise provided by specific rules of this Court." D. Minn. LR 83.6(d)(2).

The Minnesota Rules of Professional Conduct contain the following relevant provisions:

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.

Minnesota Rule of Professional Conduct 1.7(a).

> A lawyer who has formerly represented a client in a matter shall not thereafter:

> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Minnesota Rule of Professional Conduct 1.9.

In applying these rules, the Minnesota Supreme Court has established the following test for disqualification:

> (a) Considering the facts and the issues involved, is there a substantial, relevant relationship or overlap between the subject matters of the two representations?
>
> (b) If so, then certain presumptions apply: First, it is presumed, irrebuttably, that the attorney received confidences from the former client and he or she will not be heard to claim otherwise. Second, it is also presumed, but subject to rebuttal, that these confidences were conveyed to the attorney's affiliates.
>
> (c) Finally, at this stage, if reached, the court weighs the competing equities.

Jenson v. Touche Toss & Co., 335 N.W.2d 720, 731-32 (Minn. 1983) (citations omitted).

The substantial relationship test "refers more to the degree of proof required than to what is to be proved." Id. citing Westinghouse Elec. Corp. v. Gulf Oil Corp., 588 F.2d 221, 224 (7th Cir. 1978).

> The rule thus does not necessarily involve any inquiry into the imponderables involved in the degree of relationship between the two matters but instead involves a realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other.

Westinghouse, 588 F.2d at 224. "The evidence need only establish the scope of the legal

representation and not the actual receipt of the allegedly relevant confidential information." Id.

### C. Parties' Arguments.

Defendant seeks to depose Lareau and Fox of the Oppenheimer firm on the potential conflict of interests issue. And, "if needed after those depositions, a supplemental Firm designee regarding conflict check and screening procedures." Defendant explains that Lareau's former representation of Hansen raises significant ethical concerns. In addition, because the Oppenheimer firm never adopted a screening procedure for the present case, Defendant argues that there is the risk that Plaintiff's current lawyers have access to confidential information that Hansen previously provided to Lareau.

Defendant argues that there is a substantial relationship between the subject matter of Lareau's representation of Hansen and the Oppenheimer firm's representation of Plaintiff. Defendant states that Lareau was his lawyer over a 20-year period, representing various of his companies. In the case of one company, Defendant states that the Oppenheimer firm represented it in patent litigation matters that settled prior to trial. In the present case, Plaintiff explains that Hansen shared information with Lareau and received advice from him in 1992 concerning his vest project. Hansen discussed this subject with Lareau directly after viewing ABI's product, which would eventually lead to the patent that Plaintiff now claims was infringed. Further, Defendant argues that by questioning Hansen concerning his activities in 1992, Plaintiff exacerbated the potential problem, and demonstrated that it believes those activities are substantially related to the subject matter of the current lawsuit.

Defendant also explains that Plaintiff refused to comply with earlier discovery requests, thus making the current motion necessary. Defendant explains that it raised this issue during

Hansen's deposition, with the subsequent subpoena duces tecum, and during its attempted deposition of Plaintiff's attorneys. In each of these instances, Plaintiff's attorneys refused to answer questions, stating generally that there is no conflict problem. Further, Plaintiff submitted additional documents with its opposition papers to the current motion, which it failed to produce during a document production on August 20, 2001. Hence, Defendant does not know whether it has received all the relevant information.

Finally, Defendant emphasizes that granting its current motion will not prejudice Plaintiff. Defendant explains that it has not brought a motion for disqualification. At this point, it is only seeking to depose two or three of Plaintiff's attorneys. Defendant states that these depositions will take less than a day, and thus, will not significantly delay trial preparations.

Plaintiff responds that there is no conflict of interests problem in the present case. Plaintiff states generally that while Hansen was a former client of the Oppenheimer firm, Defendant itself never was. Plaintiff then explains that Hansen's relationship with Lareau also does not produce a conflict of interests. Plaintiff states that Lareau is not an intellectual property lawyer, and has not been involved in any of the present patent infringement case. According to Plaintiff, Lareau's work for Hansen was primarily attempting to put him in touch with potential investors, and did not offer Hansen intellectual property advice. Also, Plaintiff states that Hansen never shared any seriously detailed information concerning the vest with Lareau. Instead, all of Lareau's notes record a very general discussion which took only six minutes. This general information is irrelevant to the current patent infringement case, according to Plaintiff, which instead concerns very specific details of the product's components. Plaintiff also explains that the allegedly infringing product became publicly available in 2000, thus diminishing the

issue of confidential information.

In addition, Plaintiff asserts that Defendant unduly delayed in bringing its motion. Plaintiff explains that Defendant was aware of this issue as early as 1999, when Lareau informed Hansen that the Oppenheimer firm could not represent him. More importantly, the situation was made entirely clear on December 6, 2000, when Plaintiff served and filed the Complaint.

Plaintiff emphasizes that disqualification of counsel at such a late stage in the present case would cause Plaintiff enormous prejudice. It further asserts,

> The facts pertaining to the issues in this case, the nature of the communications between Mr. Lareau and Mr. Hansen, and the timing of Electromed's discovery and motion show that Electromed's true purpose is not derived from any legitimate concern about the use of confidential information. Instead, the discovery, subpoena and motion is calculated to cause embarrassment, undue burden and expense at a critical time in litigation.

Consequently, Plaintiff requests a protective order "to prevent further harassment." In addition, Plaintiff requests that the Court impose a monetary sanction on Defendant and its attorneys.

### D. <u>The Court's Order.</u>

The Court grants Defendant's motion, and denies Plaintiff's motion. The discovery Defendant seeks is relevant. The above-mentioned authority indicates that there may well be a substantial relationship between the subject matter of Lareau's representation of Hansen, and the present suit. In 1992, when Hansen discussed his own vest with Lareau, the vest had come about as a reaction to ABI's product. That is the same product which Plaintiff now alleges that Defendant infringed. Hence, Hansen may have disclosed confidential information that could be harmful to him in the present case. Whether or not this situation constitutes a substantial

relationship, it certainly is enough to justify the limited additional discovery which is sought.

Despite Lareau's prior representation of Hansen, the Oppenheimer firm did not attempt to screen him off during the present litigation. The Oppenheimer firm has also refused to respond to Defendant's questions on this subject. And the history of its document production on this issue provides no assurance that Defendant has all the relevant information. It would be incorrect to permit Plaintiff to prevent further discovery simply by arguing that Lareau is not an intellectual property lawyer, or that Defendant's vest eventually became a public product. Hansen retained Lareau at various times over a period of approximately 20 years, and could have provided additional information beyond what is now publicly available. Moreover, Defendant states that it can complete the discovery it seeks within a day. Therefore, it will not significantly interfere with trial preparation.

Moreover, Defendant's motion concerns only additional discovery, and not actual disqualification. As a result, certain of Plaintiff's concerns are not yet relevant. Plaintiff argues that the equities favor it because the Oppenheimer firm has worked on this case for an extensive period of time, and the conflict issue was raised at a very late point. Those are relevant considerations if a motion for disqualification is eventually brought. They do not, however, justify preventing a single day's worth of relevant discovery on this issue.

The Court is aware that with the growth of modern law firms, and the mobility of attorneys among firms, disqualification is no longer as readily ordered. But those same developments have produced the need for protections such as screening off attorneys who possess confidential information from former clients. If the Oppenheimer firm had taken such a precaution, or made other demonstrable attempts to limit potential damage to Defendant, this

motion to compel might have been unnecessary. But given the current situation, it is appropriate for Defendant to seek this discovery. Therefore, the Court permits Defendant one day in which to take the three depositions it requests.

**THEREFORE, IT IS HEREBY ORDERED that:**

(1) Defendant's Motion to Compel Discovery (Doc. No. 37 ) is **GRANTED**;

(2) Plaintiff's Motion for Protective Order and Sanctions (Doc. No. 41) is **DENIED**.

Dated: June 4, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

*Featured Speakers Include:*

**District of Minnesota**

**Judge David S. Doty**

**Judge Donovan W. Frank**

**Judge Paul A. Magnuson**

**Judge Ann D. Montgomery**

**Judge John R. Tunheim**

**Chief Magistrate Judge Jonathan Lebedoff**

**Magistrate Judge Arthur J. Boylan**

**United States Bankruptcy Court**

**District of Minnesota**

**Judge Robert J. Kressel**

**Application Pending for 7.5 CLE Credits including 2 Ethics and 1 Bias Credit**

**The Minnesota Chapter of the Federal Bar Association**
c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minneapolis, MN
Permit No. 2657

**MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION**

**In connection with
The Federal Judiciary**

# *28th Annual Federal Court Practice Seminar*

**June 19, 2002
8:00 am—5:15 pm**

**Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000**

## Morning Session:

| | |
|---|---|
| **7:30-8:00** | **Registration** |
| **8:00-8:15** | **Opening Remarks and Welcome,** ***Judge Ann D. Montgomery*** |
| **8:15-9:00** | **Securities Law Issues in the Wake of Enron,** ***Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| **9:00-9:45** | **Current Issues in Employment Law,** ***Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| **9:45-10:00** | **Morning Break** |
| **10:00-10:45** | **Current Initiatives in the U.S. Attorneys' Office,** ***Tom Heffelfinger (U.S. Attorneys Office)*** |
| **10:45-11:45** | **Discovery Disputes: Professionalism in the Practice of Law?,** ***Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| **11:45-12:45** | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| **12:45-1:30** | **The Clerk's Office Can Be Your New Best Friend,** ***Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| **1:30-2:15** | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How,** ***Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| **2:15-3:15** | **Issues in the Wake of 9/11: Racial Profiling --** ***Daniel M. Scott (U.S. Federal Public Defenders' Office);*** **Response by the Department of Justice --** ***Tony Brown (U.S. Attorneys Office)*** |
| **3:15:3:30** | **Afternoon Break** |
| **3:30-4:15** | **Update on Technology Tools for Litigating in Federal Court,** ***Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| **4:15-5:15** | **Ethics in "Real Life" Practice Situations,** ***Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## Seminar Registration

☐ Member $195.00
☐ Non-Member $225.00

Name ______________________
Firm/Employer ______________________
Address ______________________
______________________
______________________
Phone ______________________
E-Mail ______________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building