**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Advanced Respiratory, Inc., Civil No. 00-2646 (DWF/SRN)

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**

Electromed, Inc.,

Defendant.

---

Edward F. Fox, Esq., Edward M. Laine, Esq., Cyrus A. Morton, Esq., and David J. McKinley, Esq., Oppenheimer Wolff & Donnelly, LLP, 3400 Plaza VII Building, Suite 3300, 45 South Seventh Street, Minneapolis, Minnesota 55402, counsel for Plaintiff.

Richard J. Bartz, Esq., and Richard O. Bartz, Esq., Bartz & Bartz, 350 Southdale Office Center, 6750 France Avenue South, Edina, Minnesota 55435; Karl L. Cambronne, Esq., Chestnut and Cambronne, 3700 Piper Jaffray Tower, 222 South Ninth Street, Minneapolis, Minnesota 55402; William J. George, Esq., George Law Office, 2312 Old Beach Road, Wayzata, Minnesota 55391; and Paul A. Koches, Esq., McLean Group, 1025 Connecticut Avenue Northwest, Suite 1012, Washington, District of Columbia 20036, counsel for Defendant.

---

## INTRODUCTION

The above-entitled matter is before the undersigned United States District Judge pursuant to Plaintiff Advanced Respiratory, Inc.'s Partial Motion for Summary Judgment. In its Complaint, Plaintiff alleges that Defendant Electromed, Inc., infringed upon Plaintiff's U.S. Patent No. 6,036,662 (the "'662 Patent") and upon the University of Minnesota's U.S. Patent No. 4,838,263 (the "'263 Patent"). Plaintiff has moved for partial summary judgment to eliminate Defendant's affirmative defense of inequitable conduct. For the reasons set forth below, Plaintiff's motion is granted.

FILED ____________
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ________
DEPUTY CLERK ________

## Background

Plaintiff Advanced Respiratory, Inc., formerly known as American Biosystems, Inc., manufactures and distributes oscillatory chest compression devices that are used to treat various respiratory diseases, such as cystic fibrosis. Generally, the device consists of a vest with an inflated air bladder. The device employs a diaphragm to oscillate the air pressure in the vest, creating pulsing blows that loosen lung secretions and thereby assist in their expulsion. Plaintiff's '662 and '263 Patents relate to this technology. The history of those two patents follows.

Plaintiff and the University of Minnesota entered into a licensing agreement on November 2, 1988, whereby the University granted Plaintiff an exclusive license to commercialize the technology from U. S. Patent application No. 045,888 (the "'888 Patent application") and gave Plaintiff the right to bring suit to enforce these patent rights against third parties. The '263 Patent issued from the '888 Patent application. Plaintiff sold its Model 102 product pursuant to this licensing agreement.

During the course of its licensing agreement with the University of Minnesota, Plaintiff developed the Model 103 product. Plaintiff alleges that Model 103 resulted from improvements to the '263 Patent designs and the Model 102 product. In approximately December 1996, Plaintiff and the University set out to determine whether the Model 103 product was covered by the '263 Patent owned by the University. Both the University and Plaintiff concluded that it was not. Plaintiff's patent counsel at the Fish & Richardson law firm prepared an opinion letter to this effect (the "Fish & Richardson Opinion").[1]

---

[1] After a discovery controversy between the parties, the Fish & Richardson Opinion (continued...)

Plaintiff's '662 Patent application was filed on March 16, 1998. The '662 Patent was based upon Plaintiff's advancements made in the Model 103 device. The '662 Patent matured from an application that was filed as a continuation of an earlier-filed parent application. This parent application resulted in U.S. Patent 5,769,797 (the "'797 Patent").

Plaintiff alleges that Electromed has infringed upon the '662 and '263 Patents by manufacturing and distributing a device, the Medpulse 2000, that uses the same oscillating pressure technology as the '662 and '263 Patents. Electromed, in its Answer to Plaintiff's Amended Complaint, asserts that Plaintiff's '662 Patent is unenforceable because Plaintiff engaged in inequitable conduct before the Patent and Trademark Office (PTO). These assertions of inequitable conduct are the focus of Plaintiff's Motion for Partial Summary Judgment.

**Defendant's Allegations of Inequitable Conduct**

In its Answer to Advanced Respiratory's Amended Complaint, Defendant alleges, *inter alia*, that Plaintiff "knowingly [withheld] relevant prior art and prior art rejections from the U.S. Patent and Trademark Office during the prosecution of the patent application that matured into the '662 patent." Electromed's Answer at ¶ 32. Defendant specifically alleges that several circumstances constitute inequitable conduct by Plaintiff before the PTO.

---

[1](...continued)
was recently submitted to Magistrate Judge Susan Richard Nelson for *in camera* review to determine whether the Opinion may be disclosed to Defendant. By an Order dated October 10, 2002, Magistrate Judge Nelson ordered Plaintiff to release the Fish & Richardson Opinion to Defendant.

**1. Failure to Disclose the Zidulka/Gross References in the Continuation Application that Led to the '662 Patent**

Defendant's expert Orrin M. Haugen submitted a report alleging that Plaintiff's failure to cite two material publications in its '662 continuation application resulted in inequitable conduct. These two publications are listed as follows:

a. Zidulka et al., "Ventilation by High-Frequency Chest Wall Compression in Dogs with Normal Lungs," *Am. Rev. Respir. Dis.*, 127:709-713 (1983); and

b. Gross et al., "Peripheral Mucociliary Clearance with High-Frequency Chest Wall Compression," *The American Physiological Society* (1985)

(the "Zidulka and Gross references"). Defendant alleges that Plaintiff's failure to submit the Zidulka and Gross references in the '662 continuation application constituted inequitable conduct before the PTO and that such inequitable conduct resulted in an unenforceable '662 Patent. Plaintiff alleges that these references were submitted in the parent application (*i.e.*, the '797 Patent application) and thus were not required to be resubmitted with the continuation application (*i.e.*, the '662 Patent application).

**2. Other Allegations of Inequitable Conduct**

In its Response to Plaintiff's Motion for Partial Summary Judgment, Defendant cites several other circumstances that Defendant alleges evidence Plaintiff's inequitable conduct before the PTO. Specifically, Defendant points to the following circumstances:

a. Defendant alleges that the Fish & Richardson opinion includes prior art relevant to the '662 and '263 Patents and that such prior art was not made of record in the '797 parent application.

b. Defendant alleges that Plaintiff did not include other prior art in the '662 or '797 Patent applications for consideration by the PTO. This prior art allegedly includes publications regarding high frequency chest compression studies and devices, a reference to Canadian Patent No. 1,225,889, prior art brochures, and selected readings.

c. Defendant alleges that Plaintiff failed to disclose several claims that were rejected in the '797 Patent application as unpatentable.

d. Defendant alleges that new matter was added to the '662 Patent application. Specifically, Defendant alleges that Plaintiff modified Claim 1 of the '662 Patent application to delete the word "positive" and add the word "continuous" to distinguish the air flow generator of the '662 Patent application from the air flow generator in the '263 Patent.

e. Defendant alleges that Plaintiff did not disclose to the PTO the structure, operation, and printed materials related to Plaintiff's Model 102 respiratory vest systems, such systems which were in use one year prior to the filing of the '797 Patent application.

f. Defendant alleges that Plaintiff did not disclose to the PTO that Plaintiff's Model 103 respiratory vest systems were in public use more than one year before the filing of the '797 Patent application.

Based upon these circumstances, Defendant asserts that Plaintiff's Motion for Partial Summary Judgment to eliminate Defendant's inequitable conduct defense is inappropriate.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. The Gross and Zidulka References**

The primary focus of Plaintiff's motion for partial summary judgment is disputing Defendant's claim that the Gross and Zidulka references were improperly excluded from the '662 Patent application. Plaintiff argues that the Federal Circuit's decision in *ATD Corp. v. Lydall, Inc.*, is dispositive of this issue. The Court finds Plaintiff's arguments persuasive.

In *ATD*, the Federal Circuit Court of Appeals held that prior art references were not required to be resubmitted in a divisional patent application when those same references were cited or submitted in the parent application. *ATD Corp. v. Lydall, Inc.*, 159 F.3d at 547. The court based its decision upon M.P.E.P. § 609, which, at the time of Plaintiff's application for the '662 patent, stated as follows:

> the patent examiner will consider information cited or submitted to the Office in a parent application when examining a continuing application, and a list of the information need not be submitted in the continuing application unless applicant desires the information to be printed on the patent.

M.P.E.P. § 609 (Rev. 3, July 1997).[2] The court specifically held, "[i]n view of § 609, it can not be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." *ATD Corp. v. Lydall, Inc.*, 159 F.3d at 547.

While the issue in *ATD* concerned a divisional application rather than a continuation application, it is clear to this Court that the M.P.E.P. rule cited in *ATD* is directly on point. The Gross and Zidulka references were cited in the '797 Patent application, the parent application to the continuation '662 Patent. Thus, based upon the M.P.E.P. rule and the holding articulated by the court in *ATD*, the Court finds that there is no basis for inequitable conduct in Plaintiff's failure to cite the Gross and Zidulka references in the '662 Patent.

**3. Other Alleged Inequitable Conduct**

Inequitable conduct by a patent applicant before the PTO may render a patent unenforceable for the life of the patent. *Kingsdown Medical Consultants, Ltd., v. Hollister Inc.*, 863 F.2d 867 (Fed. Cir. 1988) (*en banc*), *cert. denied*, 490 U.S. 1067 (1989). The Federal Circuit has set out a two-part test to determine whether inequitable conduct exists. First, the party alleging inequitable conduct must make a threshold showing, establishing by clear and convincing evidence that the applicant failed to disclose material information to the PTO and that the applicant intended to mislead or deceive the PTO into granting the patent. *ATD Corp. v.*

---

[2] While the parties have not briefed the issue, slight changes have been made to the language of M.P.E.P § 609 since the version that was cited in *ATD*. *See, e.g.*, M.P.E.P. § 609, Sixth Ed., Rev. 1 (September 1995); M.P.E.P. § 609, Eighth Ed. (August 2001). However, it appears to the Court that the various historical versions of the M.P.E.P. are fundamentally consistent with the version cited in *ATD*. Thus, even if the language of § 609 at the time Plaintiff applied for the '662 Patent differs slightly from the version of § 609 cited in *ATD,* the same principles apply.

*Lydall, Inc.*, 159 F.3d at 546. Once that threshold showing is established, the court balances the levels of materiality and intent to determine whether inequitable conduct before the PTO has indeed occurred. *Id., citing Kingsdown Medical Consultants, Ltd., v. Hollister Inc.*, 863 F.2d 867, 872, 9 U.S.P.Q.2d 1384, 1389 (Fed. Cir. 1988).

Regarding the above circumstances (apart from the Gross & Zidulka references) that Defendant has alleged resulted in Plaintiff's inequitable conduct, Defendant has not made even the barest threshold showing of materiality. Defendant merely has asserted the existence of these circumstances, without providing any evidentiary support as to their materiality or relevance. Unsupported assertions that a fact is material do not make it so. Because Defendant has not met the materiality threshold, the Court need not go any further in its analysis. Plaintiff's motion for partial summary judgment is granted and Defendant's affirmative defense of inequitable conduct is eliminated.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 73) is **GRANTED**.

Dated: October 21, 2002

DONOVAN W. FRANK
Judge of United States District Court